IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 15, 2004

## STATE OF TENNESSEE v. JANICE MICHELE WALKER

**Direct Appeal from the Criminal Court for Knox County**
**No. 76740      Ray L. Jenkins, Judge**

—————————

**No. E2003-02753-CCA-R3-CD - Filed August 30, 2004**

—————————

Defendant, Janice Michele Walker, was charged in a four-count presentment with theft over $10,000, forgery over $10,000, computer fraud, and money laundering. Defendant pled guilty as a Range I standard offender to theft and forgery, both Class C felonies, and the other charges were dismissed. Pursuant to the negotiated plea agreement, Defendant was sentenced to four years for each offense, to be served consecutively, and she was ordered to pay restitution. The trial court determined the manner of service of Defendant's sentence. Following a sentencing hearing, the trial court ordered Defendant to serve her effective eight-year sentence in confinement. Defendant appeals the trial court's denial of full probation. After a review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Mark E. Stephens, District Public Defender; and Robert C. Edwards, Assistant District Public Defender; and John Halstead, Assistant District Public Defender, for the appellant, Janice Michele Walker.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Randall E. Nichols, District Attorney General; William C. Bright, Special Prosecutor, for the appellee, the State of Tennessee.

### OPINION

**Sentencing Hearing**

At the sentencing hearing, Rene Brison, of the Division of Municipal Audit, testified that an audit of the East Tennessee Human Resource Agency (ETHRA) revealed that over $53,000 was misappropriated from clients who were receiving Social Security disability income benefits through

the agency. Ms. Brison testified that Defendant misappropriated the funds of more than 43 clients. Defendant made requests for checks payable to her out of client accounts which she cashed and used to pay utility bills and buy gift cards. Ms. Brison testified that Defendant "trad[ed gift cards] for drugs." Of the misappropriated funds, less than $5,000 was used by Defendant to pay utility bills; Defendant received almost $30,000 in cash; and over $13,000 was used to buy Wal-Mart gift cards. Ms. Brison testified that this illegal activity occurred over a period of 16 months.

Glenda Loope, the program manager of the SSI representative payee program of ETHRA, testified that 80 percent of individuals who receive benefits under the program are mentally impaired and cannot manage their own finances. Defendant was responsible, as a representative payee, for using the benefits available to those individuals to buy them food, shelter, and clothing. Ms. Loope testified that Defendant had made several purchases, including a television, a radio, a police scanner, clothing, and a bed, on behalf of Joe Woodring. When Ms. Loope visited Mr. Woodring, she saw that he had only a mattress on the floor and a used television, which he stated that he had bought from a pawn shop. Ms. Loope explained to Defendant that in order for the funds to be restored to client accounts, Defendant would have to disclose the amount of the misappropriated funds, but Defendant told Ms. Loope only "about some of the money but not all of it."

Defendant testified that she began using marijuana at the age of nineteen, and she began using cocaine at the age of twenty-two. Defendant admitted to having prior convictions for shoplifting and forgery. Defendant testified that she pled guilty to forgery when she was twenty years old. Defendant was placed on probation for that offense. Defendant testified that drug abuse was a factor in her having committed those offenses. Defendant testified that she had received treatment for her drug use at the age of thirty, and she had remained drug-free until her marriage to Johnny Walker. Defendant testified that she was married to Mr. Walker during the commission of the offenses in this case, but they were separated at the time of sentencing, and Defendant testified that she intended to "divorce him as soon as possible." Defendant testified that her husband was unemployed and "smoking crack" during the time she committed the offenses. Defendant testified that her mother, Jan Weaver, worked for ETHRA and that she had assisted her in obtaining employment there. Defendant testified that she was responsible for managing money for the people whose funds she misappropriated. Defendant testified that she was grateful to her mother for supporting her. Defendant expressed remorse, stating, "I wish I could make it all go away." Defendant testified that while she was incarcerated, she completed drug treatment at Centerpointe.

At the conclusion of the sentencing hearing, the trial court ordered Defendant to serve her eight-year sentence in confinement. The trial court stated as follows:

> [ETHRA] involves the handling of small funds of people who do not have the ability to care for themselves. And – and this offense is not done on a whim, but on a – over a period of time as a cold, calculating, knowing theft. One might say the amounts are nickel and dime. You don't steal the corporate assets like this. It appears to the court that this type of incremental theft carries more culpability than theft in block amounts.

The Court has had the benefit of the presentence investigation and report, the report from Enhanced Probation, the report from the Community Alternatives to Prison Program, which is similar in Knox County to ETHRA in the surrounding counties.

The Court has had the testimony of the witnesses, statements of attorneys, and has considered, as well as these reports and the testimony, the defendant's interest, behavioral record, employment history, social history, present condition, including the physical and mental, the interest of the public. The Court feels that the defendant also has a lack of remorse and further that she has been addicted to controlled substances and/or alcohol, her failure to make restitution. All of this require the imprisonment of the defendant for her own best interest and especially for the protection of the public, and probation or alternative sentencing is denied.

**Analysis**

Defendant challenges the trial court's denial of probation. Defendant argues that the trial court erred by not considering the fact that Defendant's husband was unemployed and addicted to crack cocaine at the time she committed these offenses. Defendant also argues that the trial court should have considered Defendant's potential for rehabilitation.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

In conducting our review, we are required to consider the following factors in sentencing: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991).

A defendant is eligible for probation if the sentence received is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the

defendant has the burden of establishing suitability for total probation. *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also Ashby*, 823 S.W.2d at 169.

Probation may be denied based solely upon the circumstances surrounding the offense. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); *Hartley*, 818 S.W.2d at 374. However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. *Hartley*, 818 S.W.2d at 374-75.

The State argues that the trial court properly denied probation in this case because confinement is necessary to avoid depreciating the seriousness of the offense. The trial court did not specifically find that consideration. However, the trial court noted that Defendant was responsible for handling the "funds of people who do not have the ability to care for themselves," and Defendant committed the offenses over a lengthy period of time. The trial court also found that Defendant lacked remorse, that she had a history of drug addiction, and that she had failed to make restitution in this case. The trial court concluded that a sentence of confinement was in the best interest of Defendant and the public.

The State also argues that Defendant has a history of criminal conduct and a poor potential for rehabilitation. The presentence report shows that Defendant was convicted in 1987 for forgery and received three years to be suspended and served on probation. Defendant also has two prior theft convictions. Defendant testified that she completed the Centerpointe Inpatient Treatment Program

while incarcerated and awaiting sentencing in this case.  However, the record indicates that past efforts at rehabilitation have failed.  Defendant testified on cross-examination that she began using drugs while on probation for her prior forgery conviction.  We conclude that there is evidence to support the trial court's denial of probation.

## CONCLUSION

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE